**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ALEXIS FRANK,

Plaintiff,

Case No. 3:24-cv-1005-TJC-SJH

v.

MIKAH VAZQUEZ, ZACHARY EAST, and TYLER BROWN,

Defendants.

---

**O R D E R**

This case concerns an encounter between Plaintiff Alexis Frank and Defendant law enforcement officers. It is before the Court on Defendants' Motion to Dismiss the Third Amended Complaint. (Doc. 45). On two separate prior occasions, the Court directed Plaintiff to amend her complaint to include specific facts surrounding the encounter. (Docs. 24, 41). Now that Plaintiff has largely cured the defects the Court identified in her earlier complaints, the Court is prepared to rule on Defendants' motion.

## I. Facts

The Court takes the allegations in the complaint as true in deciding on the motion to dismiss. See Almanza v. United Airlines, Inc., 851 F.3d 1060, 1066 (11th Cir. 2017). Notably, Plaintiff's allegations are consistent with the body-

worn camera footage submitted by Defendants on March 20, 2026 and referenced in Plaintiff's complaint.[1]

Plaintiff alleges that on May 20, 2023, Nassau County Sheriff's Office ("NCSO") deputies—Defendants Vazquez, East, and Brown—went to her property in Yulee, Florida, to conduct a welfare check. (Doc. 44 ¶ 12). Defendants were called to conduct the welfare check after Plaintiff's neighbor called NCSO to report the following exchange between herself and Plaintiff:

> . . . I said let him [Plaintiff's son] stay the night because all the other kids are staying, and I was like, go home, get some sleep. And [Plaintiff] said 'If I don't pick him up in the morning, it's because I killed myself because I'm going to take the rest of that bottle of Xanax.'

(Id. ¶ 13). The neighbor also reported that she had been drinking with Plaintiff. (Id.). When they arrived, Defendants first observed Plaintiff through her

---

[1] Defendants note that the footage referenced in Plaintiff's complaint is actually from Deputy Lawson's uniform, rather than that of Deputy Vazquez, but concede that despite this mislabeling, "the contents of the footage cannot reasonably be disputed." (Doc. 45 ¶ 16).

Because the body-worn footage is referenced in her complaint, the footage is central to her claim, and the contents thereof are undisputed, the Court may consider it in deciding the motion to dismiss. See Baker v. City of Madison, 67 F.4th 1268, 1276 (11th Cir. 2023) ("Under the incorporation-by-reference doctrine, a court may consider evidence attached to a motion to dismiss without converting the motion into one for summary judgment if (1) 'the plaintiff refers to certain documents in the complaint,' (2) those documents are 'central to the plaintiff's claim,' and (3) the documents' contents are undisputed. . . . Evidence is 'undisputed' in this context if its authenticity is unchallenged.") (citing, inter alia, Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)).

backyard window, laying in her bed, looking at her cell phone. (Id. ¶ 15). Plaintiff told Defendants to leave, stating through her bedroom window that she did not want to speak with them. (Id. ¶ 16). Defendant Vazquez rang Plaintiff's doorbell and banged on her front door. (Id. ¶ 17). Plaintiff opened her front door and told Defendants to leave again, stating that she did not want to speak with them, then closed her door. (Id. ¶¶ 18–19). Defendant Vazquez then stated, "She opens that door again[,] it's not closing," rang the doorbell again, and banged on her front door. (Id. ¶¶ 20–21). After Plaintiff denied Defendant Vazquez's requests that she "come outside and talk to [him,]" he stated, "[w]ell, you don't really have a choice so come outside and talk to me." (Id. ¶¶ 22–27).

After again denying his request, Defendant Vazquez stated, "Ma'am you can either come outside or I will make you come outside[,]" and after Plaintiff again said no, Defendant Vazquez asked the other deputies, "Hey do y'all wanna bull wrap her or something?" (Id. ¶¶ 28–31). Plaintiff stated, "You cannot come in my house," to which Defendant Vazquez replied, "I can . . . so come outside right now," and Plaintiff again said no. (Id. ¶¶ 33–34).

Plaintiff alleges that Defendant Vazquez then put his right foot in front of the door "to prevent Plaintiff from closing it" then "physically advanced on Plaintiff[,] fully entering [] her Residence" without consent or a warrant. (Id. ¶¶ 36–38). Once inside, Defendant Vazquez stated, "Ma'am come outside," and Defendant East stated, "[w]e need to talk to you[,] it's pretty simple, we're not

going to be difficult," to which Plaintiff responded, "[i]f you f*cking touch me I swear to God!" (Id. ¶¶ 39–41). Defendants pointed a taser at Plaintiff and one stated, "[c]ome outside right now or you're gonna get tased." (Id. ¶ 44). Plaintiff was handcuffed in her residence at approximately 9:41 p.m., after which Defendant Vazquez said, "[w]e just wanted to talk." (Id. ¶ 45). Plaintiff was then placed in the backseat of a police vehicle, and while in the car, she denied being suicidal. (Id. ¶ 55).

On May 25, 2023, five days after this incident, Plaintiff "regained her liberty from River Point Behavioral Health . . . because she did not meet the criteria to be held under the Baker Act[.]" (Id. ¶ 56). She claims she was subject to an "involuntary examination" that was "unlawfully initiated by the Deputies." (Id.).

## II. Legal Standard

A complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Upon a party's motion, a court may dismiss the complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "When considering a motion to dismiss, the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in the light most favorable to the plaintiff." Levine v. World Fin. Network Nat'l Bank, 437 F.3d 1118, 1120 (11th Cir. 2006) (citations omitted).

## III. Analysis

The Fourth Amendment protects people from unreasonable searches and seizures. "Fourth Amendment claims for unlawful entry [and] unlawful arrest or detention . . . are separate claims that focus on different points in a law enforcement officer's interaction with the plaintiff." Dukes v. Sheriff of Levy Cnty., 155 F.4th 1291, 1300 (11th Cir. 2025) (citations omitted). Generally, an unlawful search of the home occurs when a law enforcement officer, without a warrant, "ent[ers] into a home without either an exigency justifying entry or consent to enter." Id. at 1297. Separately, a seizure occurs when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen[.]" Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). "'When government officials abuse their offices, actions for damages may offer the only realistic avenue for vindication of constitutional guarantees.'" Foster v. Echols Cnty. Sch. Dist., 169 F.4th 1291, 1296 (11th Cir. 2026) (alteration in original) (quoting Anderson v. Creighton, 483 U.S. 635, 638 (1987)).

Plaintiff's Third Amended Complaint (Doc. 44) sets forth six claims for relief: (I) trespass, (II) false imprisonment, (III, V) two counts of unlawful entry of her residence in violation of the Fourth and Fourteenth Amendments, and (IV, VI) two counts of unlawful detainment of her person in violation of the Fourth and Fourteenth Amendments. The unlawful entry and detainment claims are brought against Defendants under 42 U.S.C. § 1983 and are the focus of Plaintiff's complaint.[2]

Defendants argue that like the earlier complaints, the Third Amended Complaint "fails to plausibly establish a constitutional violation on behalf of any Individual Defendant." (Doc. 45 at 5). As to the unlawful entry claims, Defendants contend that their entry into her home was justified under the exigent circumstances and Florida community caretaking doctrines. (Id. at 10–13). Defendants also argue that Plaintiff "fails to allege sufficient factual matter to establish the Individual Defendants should not enjoy qualified immunity." (Id. at 5). Plaintiff responds that she alleged sufficient facts to establish

[2] Counts I and II, for trespass and false imprisonment, are brought against NCSO and Sherriff Bill Leeper. NCSO was terminated as a party on October 24, 2025, because Plaintiff's First Amended Complaint did not name NCSO as a party. (Doc. 13). The Third Amended Complaint also does not name NCSO as a party. (Doc. 44). On January 12, 2026, the claims against Sherriff Bill Leeper were dismissed with prejudice by the parties' stipulation. (Doc. 41). Therefore, Counts I and II are due to be dismissed.

unlawful entry and detention, and that Defendants are not entitled to qualified immunity on the unlawful detention claims. (Doc. 49).

**A. The Search: Unlawful Entry (Counts III and V) and the Emergency Aid Doctrine**

Law enforcement officers may enter a home without a warrant when they have an objectively reasonable basis for believing that an occupant needs emergency assistance. Marbut v. Phillips, 176 F.4th 1256, 1263 (11th Cir. 2026) (quoting Brigham City v. Stuart, 547 U.S. 398, 403, 406 (2006)). "This 'emergency aid doctrine' reflects the common-sense principle that 'preserv[ing] life or avoid[ing] serious injury is justification for what would be otherwise illegal absent an exigency or emergency.'" Id. Unlike cases involving suspected criminal activity, emergency aid situations do not require traditional probable cause. See Case v. Montana, 607 U.S. 107, 116–17 (2026). However, "an emergency-aid entry provides no basis to search the premises beyond what is reasonably needed to deal with the emergency while maintaining the officers' safety." Id.[3]

---

[3] Defendants argue they are entitled to qualified immunity on the unlawful entry claim as well as the unlawful detention claim. (Doc. 45 at 21) ("Nothing in the Third Amended Complaint makes it so that no reasonable officer under the circumstances could have believed that it was reasonable to enter Plaintiff's home to get her outside to talk[.]"). However, this is Defendants' only mention of qualified immunity with respect to the unlawful entry claim. Their qualified immunity analysis focuses instead on the unlawful detention claims. (Id. at 17–21).

As a result, Defendants have not adequately supported their qualified

Applying this standard, Defendants Vazquez and East are shielded from liability if they had an objectively reasonable basis for believing that Plaintiff needed emergency assistance. When the pleadings are construed broadly, all facts pleaded are accepted as true, and all inferences are viewed in the light most favorable to Plaintiff, Levine, 437 F.3d at 1120, she has plausibly alleged that the officers did not have this objectively reasonable basis. As explained more fully in the following section, Defendants' only information that Plaintiff was a danger to herself was received secondhand, and upon their arrival and throughout their interaction, Defendants observed Plaintiff fully awake, alert, and articulate. Their entry into Plaintiff's home potentially exceeded the scope of what was "reasonably needed to deal with the emergency[.]" Case, 607 U.S. at 117. "[A] welfare check, particularly one that evolves into a search and seizure, must be commensurate with the perceived exigency at hand[.]" Taylor v. State, 326 So. 3d 115, 118 (Fla. 1st DCA 2021) (citing Brigham, 547 U.S. at 405–07).

In sum, the Court finds that Plaintiff has plausibly alleged unlawful entry claims against Defendants Vazquez and East.

---

immunity defense on the unlawful entry claim, and the Court does not discuss it in this section. The Court does, however, discuss qualified immunity with respect to the unlawful detention claim in the following section.

**B. The Seizure: Unlawful Detention (Counts IV and VI) and Qualified Immunity**

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Castro-Reyes v. City of Opa-Locka, 166 F.4th 886, 896 (11th Cir. 2026) (quotation modified) (citing, inter alia, Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." Stephens v. DeGiovanni, 852 F.3d 1298, 1314 (11th Cir. 2017) (quoting Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)). "To survive a motion to dismiss based upon qualified immunity, the plaintiff must have alleged sufficient facts to support a finding of a constitutional violation of a clearly established law." Chandler v. Sec'y of Fla. Dep't of Transp., 695 F.3d 1194, 1198 (11th Cir. 2012) (citation omitted). See also Montoya v. Lomeli, No. 1:23-cv-20359, 2024 WL 6842592, at *6 (S.D. Fla. Mar. 21, 2024) ("When deciding qualified immunity at the motion to dismiss stage, the question is whether the complaint sufficiently alleges the violation of a clearly established right."), abrogated on other grounds by Montoya v. Hernandez, 2024 WL 6841090 (S.D. Fla. Sept. 24, 2024).

Courts engage in a "burden-shifting analysis" to determine whether a government actor is entitled to qualified immunity from a § 1983 claim. Hughes v. Locure, 166 F.4th 121, 127 (11th Cir. 2026) (citation omitted). First, the government actor must show that he was acting within the scope of his discretionary authority when he committed the challenged acts. Id. The burden then shifts to the plaintiff, who must show that qualified immunity is not appropriate by establishing: (1) that the government actor violated her constitutional or statutory right; and (2) the unconstitutionality of that conduct was clearly established at the time of the violation. Id. (citation omitted). When analyzing a plaintiff's showing, courts may "exercise their sound discretion in deciding which of [the two elements] should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Here, there is no dispute that Defendants were acting within their discretionary authority during the encounter. (See generally Docs. 45, 49). Therefore, the Court proceeds to analyze Plaintiff's burden.

**1. Clearly Established Right**

The Court first assesses whether Plaintiff has shown that her rights were clearly established at the time of the incident. A plaintiff can make this showing by, inter alia, pointing to a materially similar decision of the Eleventh Circuit. See Hughes, 166 F.4th at 128 (citing Powell v. Snook, 25 F.4th 912, 920 (11th

Cir. 2022)). Plaintiff points to cases including Khoury v. Miami-Dade County School Board, 4 F.4th 1118 (11th Cir. 2021) as "provid[ing] the clearly established Constitutional rights at the time of the incident[.]" (Doc. 49 at 10).

Florida's Baker Act allows for the involuntary examination and temporary commitment of individuals who are deemed a danger to themselves or others due to mental illness. Fla. Stat. § 394.463(1)(b)(2). However, when an officer stops an individual to ascertain a person's mental state, Fourth Amendment protections still apply. See May v. City of Nahunta, 846 F.3d 1320, 1327–28 (11th Cir. 2017). To involuntarily commit someone for mental health examination under the Baker Act, an officer must have the appropriate probable cause to do so, which is

> reason to believe that the person has a mental illness and because of . . . her mental illness . . . [t]here is a substantial likelihood that without care or treatment the person will cause serious bodily harm to . . . herself or others in the near future, as evidenced by recent behavior.

Khoury, 4 F.4th at 1126 (citing the Baker Act) (emphases in original).

In evaluating such cases, courts must look to the totality of the circumstances to determine whether "arguable probable cause" existed to detain the individual. Id. "Arguable probable cause exists if a reasonable officer, knowing the information [the officer on scene] possessed, could have believed that probable cause existed to involuntarily commit [the individual]." Id. (citations omitted). "Vague notions about what a person might do—for example,

a belief about some likelihood that without treatment a person might cause some type of harm at some point—[do] not meet this standard." Id. (emphases in original). Thus, an officer violates an individual's Fourth Amendment rights during a Baker Act seizure if he did not possess this type of arguable probable cause.

The incident at issue here took place in May 2023, well after the Eleventh Circuit published Khoury in 2021. Therefore, Plaintiff has established that her Fourth Amendment rights in this context were clearly established at the time of the encounter.

### 2. Constitutional Violation

"At the motion to dismiss stage in the litigation, the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined. Whether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded." Keating v. City of Miami, 598 F.3d 753, 760 (11th Cir. 2010) (quotation modified). Thus, the Court next assesses whether Plaintiff has plausibly alleged that Defendants violated her constitutional rights by detaining her.

Plaintiff alleges that Defendants pointed a taser at her, handcuffed her, and placed her in a police vehicle. The issue is whether they had arguable probable cause to do so. That is, whether a reasonable officer, knowing the information Defendants possessed, could have believed that Plaintiff had a

mental illness and because of that mental illness, there was a substantial likelihood that without care or treatment, Plaintiff would have caused serious bodily harm to herself or others in the near future, as evidenced by her recent behavior. Khoury, 4 F.4th at 1126.

When the pleadings are construed broadly, all facts pleaded are accepted as true, and all inferences are viewed in the light most favorable to Plaintiff, Levine, 437 F.3d at 1120, Plaintiff has plausibly alleged that Defendants did not have arguable probable cause to physically detain her. As noted, their only basis for suspecting that Plaintiff had a mental illness and because of it, she intended to harm herself, was the call from Plaintiff's neighbor. The neighbor reported to law enforcement that Plaintiff said, "If I don't pick [my son] up in the morning, it's because I killed myself because I'm going to take the rest of that bottle of Xanax." (Doc. 44 at 4). However, other than her remarks to the neighbor, as alleged, Plaintiff's "recent behavior" was not otherwise concerning. Plaintiff contends that when Defendants arrived at her residence for the welfare check:

> . . . Plaintiff was observed in bed looking at her cell phone. She clearly told [the] Deputies to leave multiple times and advised that [s]he did not want to speak with them. Plaintiff was standing up, at her front door telling them . . . to leave again and that she did not want to speak with them. It was patently clear that Plaintiff was safe. In fact, they iterated the same to Plaintiff's neighbors, and did not see a need to have Nassau County Fire Rescue or any other emergency medical provider present. . . . Plaintiff did not threaten her life in front of Defendants[.]

(Doc. 49 at 19–20).

To be sure, Defendants had some justified concern when they arrived at her residence because of Plaintiff's earlier statement to her neighbor. But at the motion to dismiss stage, Plaintiff has plausibly alleged a constitutional violation. "Vague notions about what a person might do—for example, a belief about some likelihood that without treatment a person might cause some type of harm at some point—[do] not meet [the required] standard." Khoury, 4 F.4th at 1126; cf. Montoya, 2024 WL 6842592, at *8 (finding that, on a motion to dismiss, a law enforcement officer was entitled to qualified immunity for a Baker Act claim because he was confronted with "more than just [p]laintiff's erratic behavior and knowledge of [p]laintiff's mental illness.").[4] Plaintiff was apparently conscious, alert, and articulate in communicating that she did not want to speak with the officers. She also "denied being suicidal when she was asked while she was in the backseat of the cruiser." (Doc. 44 at 10).

Defendants cite several cases to support their claim of qualified immunity, but in many of these cases, the qualified immunity issue was decided later in the litigation, such as on a motion for summary judgment. See, e.g.,

---

[4] In Montoya, the officer had arguable probable cause to detain the plaintiff under the Baker Act because the officer knew that the plaintiff "had just wandered thirteen miles from a hospital, and that he had just been knocking on the door and screaming outside a stranger's house late at night." 2024 WL 6842592, at *8.

Ellison v. Hobbs, 786 Fed. App'x 861 (11th Cir. 2019); Roberts v. Spielman, 643 F.3d 899 (11th Cir. 2011); May v. City of Nahunta, Georgia, 846 F.3d 1320 (11th Cir. 2017); Sapp v. Marcum, No. 6:21-cv-1515-PGB-DCI, 2023 WL 4405606 (M.D. Fla. July 7, 2023). On a motion to dismiss, by contrast, the record is necessarily limited, and the Court must take the plaintiff's allegations as true and resolve inferences in her favor. Levine, 437 F.3d at 1120; see also King v. Lee Cnty., No. 2:24-cv-375-JLB-KCD, 2025 WL 676224, at *13 (M.D. Fla. Mar. 3, 2025) (declining to grant qualified immunity on a motion to dismiss, an "early stage of litigation"), abrogated on other grounds by King v. Marceno, 2025 WL 3080544 (M.D. Fla. Nov. 4, 2025).

For these reasons, the Court finds that Defendants are not entitled to qualified immunity at this early stage of the litigation,[5] and Plaintiff has plausibly alleged unlawful detention claims against Defendants Vazquez and Brown.

Accordingly, it is hereby

**ORDERED:**

1. Defendants Mikah Vazquez, Zachary East, and Tyler Brown's Motion to Dismiss the Third Amended Complaint (Doc. 45) is

[5] Defendants may again assert a qualified immunity defense on a motion for summary judgment, if they so choose. See King, 2025 WL 676224, at *15.

**GRANTED** as to Counts I and II, which are dismissed with prejudice. The Motion is **DENIED** as to Counts III, IV, V, and VI.

2. Defendants Mikah Vazquez, Zachary East, and Tyler Brown's Motion to Stay Discovery (Doc. 47) is **DENIED**.
3. No later than **October 15, 2026**, Defendants Mikah Vazquez, Zachary East, and Tyler Brown must file their answer(s) to Plaintiff's Third Amended Complaint.
4. The Court will enter an amended Case Management and Scheduling Order by separate Order.

**DONE AND ORDERED** in Jacksonville, Florida, this 23rd day of September, 2026.

*Timothy J. Corrigan*
TIMOTHY J. CORRIGAN
Senior United States District Judge

hms
Copies:

Counsel of record